NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARL P. SCHEUFLER,<br><br>                Plaintiff,<br><br>   v.<br><br>DAVID J. MITCHELL, *et al.*,<br><br>                Defendants. | Civil Action No. 23-21030 (GC) (TJB)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

      **THIS MATTER** comes before the Court upon Plaintiff Karl P. Scheufler's Motion for Default Judgment against Defendants David J. Mitchell and Vincent Blythe pursuant to Federal Rule of Civil Procedure (Rule) 55(b). (ECF No. 29.) Neither Defendant has opposed the Motion. The Clerk entered default as to both Defendants on February 4, 2025. The Court carefully reviewed Plaintiff's submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Plaintiff's Motion for Default Judgment is **DENIED** without prejudice.

**I.    BACKGROUND**

      This is Plaintiff's second Motion for Default Judgment. Plaintiff commenced this action on October 10, 2023.[1] (ECF No. 1.) After Defendants failed to appear, Plaintiff filed his first

---

[1] Plaintiff identifies himself as "Iesus the Christ, an irrevocable trust by and Karl: house of Israel; Estate, Karl P. Scheufler held in irrevocable trust, Iesus: the Christ, settlor." (ECF No. 23 at 1.) The Court reiterates that Plaintiff's FAC, like his initial Complaint, appears to bear several hallmarks of Plaintiff being a "sovereign citizen." *See Scheufler v. Mitchell*, Civ. No. 23-21030, 2024 WL 4696158, at *1 n.1 (D.N.J. Nov. 6, 2024).

Motion for Default Judgment on May 17, 2024 (ECF No. 16), which the Court denied on November 6, 2024 (ECF Nos. 20, 21).[2]  On November 22, 2024, Plaintiff filed a First Amended Complaint (FAC), and Defendants once again failed to answer.  (ECF No. 23.)[3]  On January 30, 2025, Plaintiff filed a Second Motion for Default Judgment.  (ECF No. 29.)  In support of his Motion for Default Judgment, Plaintiff submits an affidavit outlining that the Summons and Complaint were personally served upon Defendants, and he attaches proof of service forms as exhibits.  (ECF Nos. 26, 27.)

As in the initial Complaint, Plaintiff's primary grievance as asserted in the FAC is that Defendants wrongfully held themselves out as shareholders and officers of Plaintiff's company, Intelenet Communications d/b/a/ Cloud 9 PBX.  (*See* ECF No. 23 ¶¶ 23, 25-26.)[4]  Plaintiff alleges that he founded and/or controlled Intelenet, which was founded "on or about April AD 1996 operating as an Independent Individual agent for telecommunication services and is formed in February 1th [sic] AD 1999 as an S-CORPORATION under federal law with the DNA substance energy life force of [Plaintiff] obtaining ab-initio as trust res."  (*Id*. ¶ 19.)  Plaintiff states that he is the "sole owner, sole shareholder, [and] sole officer" of Intelenet.  (*Id*.)  On July 16, 2012, Plaintiff registered "the Alternate Trade name Cloud 9 PBX."  (*Id*. ¶ 20.)

According to Plaintiff, in August 2012, Mitchell became a volunteer bookkeeper and Blythe became an independent contractor of Intelenet.  (*Id*. ¶ 21.)  Plaintiff alleges that

---

[2]   The Court's Opinion can be found at *Scheufler v. Mitchell*, Civ. No. 23-21030, 2024 WL 4696158 (D.N.J. Nov. 6, 2024).

[3]   Defendant Mitchell did file a letter opposing a subpoena, which suggests that he is aware of the current action.  (*See* ECF No. 37.)  Mitchell has not otherwise appeared in this case.

[4]   The exact relationship between Intelenet and Cloud 9 is unclear, but the two companies appear to be associated.

"Defendants[ ] never presented themselves as owners, officers or shareholders until they proffered CHANCERY COURT and procured unlawful control and dominion over the [Plaintiff]'s Cloud 9 property divesting him of all possession and rights by their fraud upon the court and with denial of due process so they could convert Cloud 9 property and funds for their own use and unjust enrichment." (*Id*. ¶ 23.)  Plaintiff also alleges that Blythe remotely wiped his electronic devices twice in 2017 and 2018.  (*Id*. ¶ 28.)  Plaintiff characterizes these as "terroristic cyber-attacks" and claims the remote data wipes "suppress[ed] evidence . . . causing irreparable loss, harm, and damage" to him.  (*Id*.)  Plaintiff seeks damages of $8.48 million for being deprived of "financial increase; PAYROLL; revenue; Income; earnings, future earnings and other benefits" in connection with his loss of ownership in Intelenet.  (*Id.* ¶ 23.)

Plaintiff attaches various exhibits to the FAC.  As in his initial Complaint, several exhibits are documents related to a state court case captioned *Mitchell v. Scheufler*, Docket No. OCN-C-225-17, in the Superior Court of New Jersey, Chancery Division (Chancery Case).  (*See, e.g.*, ECF No. 23-2 at 57-64.)[5]  In that lawsuit, Mitchell and Blythe—who claimed to be the Chief Financial Officer and Chief Technology Officer of Intelenet, respectively—alleged that they each received 750 shares, or around 30%, of Intelenet stock from Plaintiff in 2014.  (*Id.* at 58.)  According to Mitchell and Blythe, they agreed with Plaintiff "to take part in the management of Intelenet." (*Id.*)  A certification submitted by Mitchell in that lawsuit alleged that Plaintiff fraudulently diverted funds from Intelenet.  (*Id.* at 63.)

Plaintiff's FAC alleges that Defendants misrepresented facts to the court in the Chancery Case, which ultimately led to Plaintiff losing his interest in Intelenet.  (*See* ECF No. 23 ¶¶ 26

---

[5]  Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

("Defendants' feigned ownership, shareholder and officer status deceiving the CHANCERY COURT ex parte . . . [to] unjustly enrich themselves at [Plaintiff's] expense embezzling and converting property and funds to their own use."); 29 ("Defendants are depriving [Plaintiff] of his vested interests, shareholder rights and his expected employment previously enjoyed for nearly two decades leaving him penniless and nearly defenseless.").)

The FAC contains nine claims: eight against both Defendants with an additional claim asserted only against Blythe. (*See generally id*.) Six claims are collectively brought under "FRCP Rule 60 (b) (3) (4) (6) [sic]; 42 [U.S.C.] § 1985(2), the UNITED STATES CONSTITUTION, Amdt14.S1.5.3 Property Deprivations and Due Process" (Counts One, Two, Three, Five, Six, and Seven). (*See Id*. ¶¶ 9-11, 13-17.) The Court construes Plaintiff's assertion of the Fourteenth Amendment as asserting claims under 42 U.S.C. § 1983. These counts include allegations that Defendants "unlawfully depriv[ed Plaintiff] of property and money," (Count One), misrepresented themselves as "owners, officers and shareholders in Cloud 9 property" in court in order to "fraudulently convey Cloud 9 property" (Count Two); "knowingly ma[de] false statements under oath causing charges of an offense to be instituted against [Plaintiff]" (Count Three); "committed extrinsic fraud in conspiracy with Denise Scheufler [Plaintiff's ex-wife] . . . in denial of due process" (Count Five); disobeyed a court order that required Defendants to provide Plaintiff with company financial documents and make a written offer to purchase Plaintiff's shares of the company (Count Six); that "Defendant Mitchell ma[de] false statements to a government official, a judge, alleging that [Plaintiff] has been able to divert approximately $345,820.00" between October 2018 and December 2019 (Count Seven). (*Id*.)

Additionally, Plaintiff's FAC includes a federal Lanham Act claim for "using without permission Cloud 9 property," under U.S.C. § 1343(a)(1-4), 15 U.S.C. §§ 1125(a)(1)(A), (c)(1),

4

and 15 U.S.C. § 1117 (Count Eight); and a state law claim for conversion of property (Count Nine) against both Defendants. (*Id.* ¶¶ 17-18.) Finally, Plaintiff brings a claim under 18 U.S.C. § 1030, the Computer Fraud and Abuse Act (CFAA) (Count Four) against Blythe. (*Id.* ¶ 12.)

## II.     **LEGAL STANDARD**

Under Rule 55(a), a plaintiff may request that the clerk of court enter default as to "a party against whom a judgment for affirmative relief is sought [who] has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Once a default is entered, the plaintiff may seek entry of a default judgment—either by the clerk or the court itself—under Rule 55(b).

A party is not entitled to a default judgment as of right; "the entry of such a judgment is left primarily to the discretion of the district court." *Directv, Inc. v. Asher*, Civ. No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). Because default judgment prevents the resolution of claims on their merits, the court "does not favor entry of defaults and default judgments." *United States v. Thompson*, Civ. No. 16-0857, 2017 WL 3634096, at *1 (D.N.J. July 20, 2017) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Following an entry of default, "[a] defendant is deemed to have admitted the factual allegations of the Complaint . . . except those factual allegations related to the amount of damages." *Directv*, 2006 WL 680533, at *1. Still, "[t]he Court need not accept the moving party's legal conclusions, because [e]ven after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* (citation and internal quotation marks omitted).

"Before entering default judgment, the Court must address the threshold issue of whether it has personal jurisdiction and subject matter jurisdiction over the parties." *The Prudential Ins.*

5

*Co. of Am. v. Bramlett*, Civ. No., 2010 WL 2696459, at *1 (D.N.J. July 6, 2010).  Then, the "the Court must determine (1) whether there is sufficient proof of service, (2) whether a sufficient cause of action was stated, and (3) whether default judgment is proper." *G & G Closed Cir. Events, LLC v. Remsen Assocs., Inc.*, Civ. No. 19-13019, 2021 WL 1139873, at *2 (D.N.J. Mar. 24, 2021) (quoting *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, Civ. No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012)).  To determine whether default judgment is proper, the court evaluates "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).  If these factors weigh in favor of the moving party, the court may grant default judgment.

### III.  DISCUSSION

#### A.  Jurisdiction

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *Werremeyer v. Shinewide Shoes, Ltd.*, Civ. No. 19-10228, 2023 WL 6318068, at *2 (D.N.J. Sept. 28, 2023) (citations omitted).

As for subject matter jurisdiction, Plaintiff brings federal causes of action under the CFAA and the Lanham Act.  (ECF No. 23 ¶ 4.)  Thus, the Court has subject matter jurisdiction over those claims pursuant to 28 U.S.C. § 1331, and subject matter jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 to the extent those claims "derive from a common nucleus of

operative fact" as Plaintiff's federal law claims. *See Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966).[6]

The Court also has personal jurisdiction over Defendants. "For personal jurisdiction over 'an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.'" *Schumacher v. Betta*, Civ. No. 22-6167, 2024 WL 3092169, at *4 (D.N.J. June 21, 2024) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Here, Plaintiff alleges that Defendants reside in New Jersey and, as set forth below, Plaintiff properly served Defendants. (ECF No. 23 ¶¶1-2.) Thus, general jurisdiction is established. *See id.*

## B. Service of Process

"Before the Court can enter default judgment, it must find that process was properly served on the [d]efendant." *Est. of Ianuzzi through Carroll v. Torres*, Civ. No. 22-1269, 2022 WL 2093143, at *3 (D.N.J. June 10, 2022) (quoting *Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, Civ. No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011)). Rule 4 provides that service may be made upon an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Under New Jersey law "the primary method of obtaining personal jurisdiction over a defendant is by 'delivering a copy of the summons and complaint to the individual personally.'" *Days Inns Worldwide, Inc. v. Patel*, Civ. No. 13-6047, 2014 WL 2737893, at *1 (D.N.J. June 17, 2014) (citing N.J. Ct. R. 4:4-4).

---

[6] As the Court previously ruled, Plaintiff's §§ 1983 and 1985 claims do not support the Court's exercise of federal question jurisdiction because Plaintiff's failure to allege state action renders those claims frivolous. *See Scheufler*, 2024 WL 4696158, at *5; *St. Matthew's Slovak Roman Cath. Congregation v. Most Reverend Wuerl*, 106 F. App'x 761, 766 (3d Cir. 2004) (affirming dismissal for lack of subject matter jurisdiction where the plaintiffs brought suit against non-state actors).

7

According to the proof of service filed by Plaintiff, the Monmouth County Sheriff's Office personally served Blythe on November 27, 2024. (ECF No. 27 at 6.) A separate filing reflects that, on December 15, 2024, a private process server left a copy of the summons and FAC with Mitchell's wife.[7] (ECF No. 26.) Accordingly, the Court finds that both Defendants were properly served. *See* Fed. R. Civ. P. 4(e)(1).

C.  **Sufficiency of Plaintiff's Allegations**

Plaintiff's FAC, even when liberally construed, fails to state a legal basis for any claim within this Court's jurisdiction. Although the parties appear to have been engaged in a previous business dispute that was fully litigated in state court, Plaintiff's FAC in this case contains nothing more than "irrelevant assertions, misplaced legalisms, and sovereign-citizen verbiage."[8] *In re Johnson*, Civ. No. 22-5258, 2023 WL 1784747, at *2 (E.D. Pa. Feb. 6, 2023).

---

[7]  Plaintiff states that he hired the private process server after the Ocean County Sheriff's Office had two failed attempts to serve Mitchell. (ECF No. 28 at 3.) Based on Plaintiff's attached proof of service, it appears that the Ocean County Sheriff was able to serve Mitchell on December 18, 2024. (*Id*. at 10.)

[8]  As the Court previously noted, Plaintiff's claims may also be barred by the *Rooker-Feldman* doctrine. *See Scheufler*, 2024 WL 4696158, at *7. Pursuant to the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010). *Rooker-Feldman* has four prerequisites: "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." Although the FAC is not entirely clear, Plaintiff appears to attack the sufficiency of the state court judgment. (*See, e.g.*, ECF No. 23 ¶¶ 23 ("Defendants[ ] never presented themselves as owners, officers or shareholders until they proffered CHANCERY COURT and procured unlawful control and dominion over [Plaintiff]'s Cloud 9 property"); 24 ("Defendants[ ] entered the doors of the CHANCERY COURT with unclean hands . . ."); 27 ("Defendants[ ] . . . knowingly procured Void CHANCERY COURT ORDERS by fraud upon the court").)

### 1. Section 1983 and 1985 Claims

The Court finds that Plaintiff's allegations in Counts One, Two, Three, Five, Six, and Seven—asserting claims under 42 U.S.C. §§ 1983 and 1985—remain insufficient for the reasons outlined in the Court's prior Opinion. *See Scheufler*, 2024 WL 4696158, at *5. Namely, Plaintiff has failed to allege that Defendants are state actors, as generally required to state a claim under those statutes. *See Thompson v. Eva's Vill. & Sheltering Program*, 243 F. App'x 697, 698 (3d Cir. 2007) (affirming summary judgment where the defendants were not state actors).

### 2. Lanham Act Claims

Under Count Eight, Plaintiff purports to assert claims under two provisions of the Lanham Act—§ 1125(a)(1)(A), the "false association" provision, and § 1125(c)(1), the "federal dilution" provision. To state a claim under either provision, Plaintiff must allege ownership of a valid and legally protectable trademark, and he must allege that Defendants' use of a substantially similar trademark causes confusion or dilution.[9] Plaintiff alleges that Defendants are using the Cloud 9 logo, "property trademarks," slogan, and marketing materials, and that such use of the "intellectual

---

[9] Under the Lanham Act's "false association" provision, § 1125(a)(1)(A), Plaintiff must show "(1) it has a valid and legally protectable [trade]mark; (2) it owns the [trade]mark; and (3) the defendant['s] use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000); *see also S&Y5, Inc. v. Sang Eun Lee*, Civ. No. 14-5911, 2016 WL 8674604, at *5 (D.N.J. Dec. 2, 2016) ("A likelihood of confusion exists if consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.") (internal quotations omitted). To plead trademark dilution, Plaintiff must show: (1) "The plaintiff is the owner of a mark that qualifies as a 'famous' mark in light of the totality of the eight factors listed in § 1125(c)(1)"; (2) "The defendant is making commercial use in interstate commerce of a mark or trade name"; (3) "[The d]efendant's use began after the plaintiff's mark became famous"; and (4) "[The d]efendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services." *Times Mirror Mags., Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 163 (3d Cir. 2000).

religious Cloud 9 property and marketing material causes confusion and deceives as to Defendant[s'] affiliation and association with the Cloud 9 property." (ECF No. 23 ¶ 17.)

Plaintiff fails to state a claim under the Lanham Act. Although Plaintiff refers to a "property trademark," he fails to allege that he owns the mark or that it constitutes a valid, legally protectable trademark, as required under 15 U.S.C. §§ 1125(a)(1)(A) and 1125(c)(1). *See S&Y5, Inc. v. Sang Eun Lee*, Civ. No. 14-5911, 2016 WL 8674604, at *5 (D.N.J. Dec. 2, 2016) ("[The p]laintiffs fail to allege that [the defendant] is using a different but similar trademark. Indeed, Plaintiffs do not sufficiently establish that they own a valid and legally protectable mark."). Plaintiff also fails to allege that the Intelenet mark is "famous," as required under § 1125(c)(1). *See* § 1125(c)(2)(A) ("[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."). Nor does Plaintiff plead a likelihood of confusion, as necessary to state a claim under § 1125(a)(1)(A). *See S&Y*, 2016 WL 8674604, at *5 ("A likelihood of confusion exists if consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.") (internal quotations omitted).

### 3.     *Conversion Claim*

Plaintiff alleges that beginning on "or about October 12 the (AD) 2017," Defendants "wrongfully converted [Plaintiff]'s property and funds, payroll wages, and residual commissions" deriving from Intelenet. (ECF No. 23 ¶ 18.) In total, Plaintiff alleges that Defendants withheld $918,584.25 in wages and commissions. (*Id.*)

Under New Jersey law, "[c]onversion is essentially the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property." *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 771 (3d Cir. 1990). Common

10

law conversion consists of the following elements: "(1) the existence of property, (2) the right to immediate possession thereof belonging to [the] plaintiff, and (3) the wrongful interference with that right by [the] defendant." *Austar Int'l Ltd. v. AustarPharma LLC,* 425 F. Supp. 3d 336, 357-58 (D.N.J. 2019) (quoting *Cap. Health Sys., Inc. v. Veznedaroglu*, Civ. No. 15-8288, 2017 WL 751855, at *10 (D.N.J. Feb. 27, 2017)). When a plaintiff asserts a conversion claim with respect to non-tangible money wages or profit participation, the "plaintiff must show that the money in question was identifiable as plaintiff's property or that the defendant was obligated to segregate such money for the plaintiff's benefit." *SalandStacy Corp. v. Freeney*, Civ. No. 11-3439, 2012 WL 959473, at *8 (D.N.J. Mar. 21, 2012); *see also Applebaum v. Fabian*, Civ. No. 18-11023, 2021 WL 5833454, at *12 (D.N.J. Dec. 9, 2021), *aff'd*, Civ. No. 22-1049, 2022 WL 17090172 (3d Cir. Nov. 21, 2022) ("Conversion can be alleged over money if the plaintiff can point to, not just a legal claim for money, but a specific, segregated sum that defendant has wrongfully acquired."); *Four Pals, LLC v. Javamoon Cafe Franchise Servs., LLC*, No. A-4457-08T3, 2010 WL 3185221, at *5 (N.J. Super. Ct. App. Div. Aug. 10, 2010) ("The tort of conversion has been historically applied to chattels, and courts have restricted its application to money to avoid turning a claim based on breach of contract into a tort claim.") (citation modified).

Plaintiff has not alleged sufficient facts for this Court to infer that any commission payments were identifiable as Plaintiff's property or that Defendants were obligated to segregate such money for Plaintiff's benefit. Nor has Plaintiff alleged that he is owed a specific, segregated sum. Rather, Plaintiff's claims for failure to receive compensation lie in a business dispute with Defendants. Courts have rejected similar attempts to bring a conversion claim in such a scenario. *See Est. of Gimelstob v. Holmdel Fin. Servs. Inc.*, No. A-3341-18T3, 2021 WL 19220, at *12 (N.J. Super. Ct. App. Div. Jan. 4, 2021) (affirming dismissal of conversion claim predicated on a dispute

over commission payments, holding that "there was no specifically identifiable money that allegedly was converted by defendants. Rather . . . the record reflects a creditor-debtor relationship, with a dispute about the amount of money owed within the context of a contractual relationship"); *O'Toole v. Philips Elecs. N. Am. Corp.*, Civ. No. 04-1730, 2006 WL 3019698, at *6 (D.N.J. Oct. 23, 2006) (granting summary judgment to the defendant on the plaintiff's conversion claim related to the non-payment of commissions, and reasoning that "this is a dispute over payment under a contract, not a situation in which [the defendant] has exercised an unauthorized act of dominion over property in which [the p]laintiff held legal or equitable title"); *Fagan v. Fischer*, Civ. No. 14-7013, 2019 WL 5587286, at *18 (D.N.J. Oct. 30, 2019) ("To the extent [the p]laintiff claims that [the d]efendants never intended to 1) re-pay [the p]laintiff for the promissory notes, 2) pay to [the p]laintiff dividends from her equity investment in [the company], or 3) manage [the company] such that [the p]laintiff's investment would provide returns, the appropriate mechanism for seeking relief lies in [the p]laintiff's fraud and breach of contract claims, not in a conversion action."); S*alandStacy Corp.*, 2012 WL 959473, at *8 ("[The p]laintiffs here have not pled that the wages and anticipated participation in profit were diverted by [the d]efendants exclusively for their use, nor have they alleged that said money was more than a mere debt that they were due under the contractual agreement.").

Moreover, the timeline alleged by Plaintiff also undermines his claim. Indeed, the date Plaintiff identifies as the start of Defendants' unlawful conversion—October 12, 2017—falls one week before the Chancery Division issued a preliminary injunction restraining Plaintiff from participating in the operations of Intelenet. *See* Chancery Case, Preliminary Injunction Order

(October 19, 2017).[10]  This Order, which was eventually made permanent, effectively terminated any right Plaintiff may have had to participate in or profit from the company's ongoing operations. *See* Chancery Case, Permanent Injunction (Feb. 19, 2019).  Given that Plaintiff was affirmatively barred by court order from having any operational role in Intelenet, it is implausible for him to now claim that he has an ongoing right to payment.

Accordingly, Plaintiff has failed to state a claim for conversion.

### 4. CFAA Claim

Finally, Plaintiff's claim against Blythe under the CFAA (Count Four) is repeated almost verbatim from the initial Complaint, which the Court already found to be insufficient.  Plaintiff's CFAA claim asserted in the FAC fails for the same reasons articulated in the Court's prior Opinion.

---

[10]  While the Court must generally accept a plaintiff's factual allegations as true, it "need not do so if those allegations are contradicted by matters of public record of which the Court has taken judicial notice." *Christopher Sirmons, Jr. v. Dep't of Corrections Admin.*, Civ. No. 25-510, 2025 WL 1583870, at *9 (M.D. Pa. June 4, 2025) (citing *In re Washington Mut. Inc.*, 741 F. App'x 88, 91 n.3 (3d Cir. 2018)); *see also McPherson v. United States*, 392 F. App'x 938 (3d Cir. 2010) (stating that courts may take judicial notice of public records, including court proceedings).

The Chancery Court docket indicates that Mitchell and Blythe presented evidence that Plaintiff submitted fraudulent money orders to the Federal Communications Commission on behalf of Intelenet.  In response, the state court issued an Order on October 19, 2017 prohibiting Plaintiff from accessing corporate bank accounts, acting as an officer or director, participating in the company's management or operations, using company credit lines, or otherwise impairing the company's business or credit.  *See* Chancery Case, Preliminary Injunction Order (October 19, 2017).  Those restrictions were reiterated in an Order dated May 11, 2018.  *Id.*, Order (May 11, 2018).  And, on February 15, 2019, the court made the above restrictions permanent.  *Id.*, Order (Feb. 15. 2019).  Despite the court's directives in the Chancery Case, Mitchell filed an affidavit with exhibits showing that Plaintiff continuously ignored the court's orders and continued to engage in various forms of financial misconduct including using Intelenet identifying information to cash stolen checks, gaining access to Intelenet financial accounts, and engaging in other forms of financial misconduct.  *Id.*, Motion to Enforce Litigant's Rights (Jan. 21, 2021) at 5-11.  In addition, Plaintiff himself attaches exhibits to his FAC showing that he was criminally prosecuted for this misconduct.  (See ECF 23-2 at 47-55 (showing criminal charges for theft of services and harassment).)

*See Scheufler*, 2024 WL 4696158, at *6 (finding Plaintiff's failure to quantify his damages flowing from the alleged CFAA violation was "fatal to his claim").

        **D.**    **Appropriateness of Default Judgment**

Since the FAC fails to state a claim for relief, Plaintiff's Motion for Default Judgment must be denied. *See Wallace v. Fed. Employees of U.S. Dist. Court, EDPA*, 325 F. App'x 96, 101 (3d Cir. 2009) (noting that granting default judgment "would not have been proper because . . . the complaint fails to state a claim upon which relief can be granted"); *Tiaa Com. Fin., Inc. v. Galusha*, Civ. No. 19-14809, 2020 WL 7022636, at *5 (D.N.J. Nov. 30, 2020) ("Granting default judgment is improper where the plaintiff has failed to state a sufficient cause of action.").[11]

## IV.    CONCLUSION

For the foregoing reasons, and other good cause shown, Plaintiff's Motion for Default Judgment (ECF No. 29) is **DENIED**. Plaintiff has 30 days in which to file a Second Amended Complaint to the extent Plaintiff can cure the deficiencies identified by the Court. As the Court already advised Plaintiff, any pleading must include a "short and plain statement of the grounds for the court's jurisdiction" and a "short and plain statement of the claim showing that the pleader is entitled to relief."[12] Fed. R. Civ. P. 8. As the FAC does not meet this standard, Plaintiff's Second Amended Complaint shall not exceed fifteen (15) double-spaced pages. Failure to comply with this directive will result in the dismissal of this action with prejudice. *See Tillio v. Northland Grp.*

---

[11]    As previously outlined, Defendants may also have several meritorious defenses, including that Plaintiff's claims are time-barred or precluded under New Jersey's entire controversy doctrine. *See Scheufler*, 2024 WL 4696158, at *7-8.

[12]    *See Scheufler*, 2024 WL 4696158, at *8 n.7. At least one other court in this District has noted Plaintiff's non-compliance with Rule 8. *See Scheufler v. Stefanski*, Civ. No. 20-6141, 2022 WL 327018, at *5 (D.N.J. Feb. 2, 2022) ("[A]ll claims in this case could also have been dismissed on the grounds that the complaint does not include a 'short and plain statement' of the claims.").

*Inc.*, 456 F. App'x 78, 79 (3d Cir. 2012) ("A district court may *sua sponte* dismiss a complaint for failure to comply with Rule 8. . . ."). An appropriate Order follows.

Dated: July 8, 2025

*[signature]*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

15