**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KARL P. SCHEUFLER,<br><br>Plaintiff,<br><br>v.<br><br>DAVID J. MITCHELL *et al.*,<br><br>Defendants. | Civil Action No. 23-21030 (GC) (TJB)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Plaintiff Karl P. Scheufler's Motion for Default Judgment against Defendants David J. Mitchell, Vincent Blythe, and Intelenet Communications, Inc. (Intelenet) pursuant to Federal Rule of Civil Procedure (Rule) 55(b). (ECF No. 50.) Mitchell opposed the Motion, (ECF No. 55), but Blythe and Intelenet have neither appeared before the Court nor opposed the Motion. The Clerk entered default as to Intelenet on October 21, 2025, and as to Mitchell and Blythe on April 13, 2026. The Court has carefully reviewed Plaintiff's submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Plaintiff's Motion for Default Judgment is **DENIED** and the Second Amended Complaint (SAC) is **DISMISSED** with prejudice.

## I. BACKGROUND

This case has been the subject of two prior Opinions of this Court denying Plaintiff's first and second motions for default judgment. *See Scheufler v. Mitchell (Scheufler I)*, Civ. No. 23-21030, 2024 WL 4696158 (D.N.J. Nov. 6, 2024); *Scheufler v. Mitchell (Scheufler II)*, Civ. No.

23-21030, 2025 WL 1885807 (D.N.J. July 8, 2025). As such, the Court presumes the parties' familiarity with the underlying facts, which are set forth in greater detail in the Court's prior Opinions, and here outlines only the factual background necessary to resolve the instant Motion.

Plaintiff filed the SAC on July 31, 2025.[1] (ECF No. 42.) This is the first complaint that names Intelenet as a Defendant, along with individuals Mitchell and Blythe. (*Compare* ECF No. 1 ¶ 1, *and* ECF No. 23 ¶¶ 1-2, *with* ECF No. 42 ¶¶ 1-3.) As with prior complaints, Plaintiff's primary grievance is that Defendants wrongfully held themselves out as shareholders and officers of Plaintiff's company, Intelenet, in proceedings before the Superior Court of New Jersey, Chancery Division, and appropriated Plaintiff's funds and shareholder rights in his intellectual property for Defendants' private use. (*See* ECF No. 42 ¶¶ 9-11, 15.) Plaintiff attaches as exhibits several documents related to the Chancery Court case captioned *Mitchell v. Scheufler*, Docket No. OCN-C 225-17. (*See, e.g.*, *id.* at 33-37, 52-54, 57, 59-60, 65-67.)[2] In that lawsuit, Mitchell and Blythe—who claimed to be the Chief Financial Officer and Chief Technology Officer of Intelenet, respectively—alleged that in 2014, they each received 750 shares, or around 30%, of Intelenet stock from Plaintiff. (*Id.* at 33-34.) According to Mitchell and Blythe, they agreed with Plaintiff "to take part in the management of Intelenet." (*Id.* at 34) A certification submitted by Mitchell in that lawsuit alleged that Plaintiff fraudulently diverted funds from Intelenet. (*Id.* at 65-66.)

[1] Plaintiff identifies himself as "Iesus: the Christ, an irrevocable trust by and Karl: house of Israel." (ECF No. 42 at 1.) Plaintiff's SAC, like his prior complaints, appears to bear several hallmarks of Plaintiff being a "sovereign citizen," *see Scheufler I*, 2024 WL 4696158, at *1 n.1; *Scheufler II*, 2025 WL 1885807, at *1 n.1, despite his disavowal of the term, (ECF No. 42 ¶ 8 ("On and for the record the Undersigned is not a Sovereign Citizen nor identified as such nor embraced those ideologies and takes offense to the slur. I do not consent or agree to this label.")). In response, Mitchell argues that "[t]his [sovereign citizen] ideology is the foundation of all the legal issues [Defendants] have had with [Plaintiff]." (ECF No. 55 at 2.)

[2] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

Plaintiff also contends that Defendants initiated criminal proceedings against him in state court, alleging that "Defendant's [sic] posing as owners of Intelenet oppressing shareholder and property rights advanced their scheme of conversion by initiating criminal prosecutions seeking jail for the Undersigned to gain unfair advantage." (*Id.* ¶ 13; *see also id.* ¶¶ 21-23, 28.) Plaintiff attaches several criminal complaints issued against him. (*See id.* at 39-51, 62-63, 69.)

Plaintiff brings five claims: four against Defendants Mitchell and Blythe (Counts One, Two, Three, and Five), one claim asserted only against Mitchell (Count Four). No claims are asserted against Intelenet, although the SAC names it as a Defendant and Counts Two, Three, and Five generally bring claims against "Defendants." (*See id.* ¶¶ 30-32, 34.) All counts are brought under "17 C.F.R. § 240.10b-5." (*Id.* at 12-14.) These counts include allegations that "Defendant Mitchell committed fraud upon chancery court" and "Blythe is complicit," (Count One); Defendants "refused to make the required disposition of their own ex parte January 10th (AD) 2020 Court Order . . . rooted in their fraud upon the court" (Count Two); in 2018 and 2020 "Defendant's [sic] initiated criminal charges fabricating evidence" as a "device in their conversion scheme" (Count Three); in 2021 "Defendant Mitchell in an official proceeding purposefully and knowingly makes a false statement under oath" (Count Four); and in 2021, Defendants "fabricated evidence" in order "to initiate another arrest and theft by deception charge another substantial step in their conversion scheme" (Count Five). (*Id.* ¶¶ 30-34.) Counts Three and Five are also brought under "42 U.S.C. § 1983 & 42 U.S.C. § 1985 (2) (3)." (*Id.* at 13, 14.) Plaintiff seeks "[i]mmediate return of the Intelenet property," compensatory damages of $994,080.00, pre- and post-judgment interest, and punitive damages. (*Id.* at 14-15.)

After all Defendants failed to answer the SAC, Plaintiff filed proofs of service alongside requests for the Clerk to enter default as to Blythe and Mitchell on September 11, 2025, (ECF Nos.

46, 47), and as to Intelenet on October 20, 2025, (ECF No. 48). The Clerk entered default as to Intelenet on October 21, 2025 and as to Mitchell and Blythe on April 13, 2026. Plaintiff now seeks default judgment against all Defendants. (ECF No. 50.)

## II. LEGAL STANDARD

Under Rule 55(a), a plaintiff may request that the clerk of court enter default as to "a party against whom a judgment for affirmative relief is sought [who] has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Once a default has been entered, the plaintiff may then seek the entry of a default judgment—either by the clerk or the court itself—under Rule 55(b). Fed. R. Civ. P. 55(b).

A party is not entitled to a default judgment as of right; "the entry of such a judgment is left primarily to the discretion of the district court." *DirecTV, Inc. v. Asher*, Civ. No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)). Because default judgments prevent the resolution of claims on their merits, the Court "does not favor entry of defaults and default judgments." *United States v. Thompson*, Civ. No. 16-0857, 2017 WL 3634096, at *1 (D.N.J. July 20, 2017) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Following an entry of default, "[a] defendant is deemed to have admitted the factual allegations of the [c]omplaint . . . except those factual allegations related to the amount of damages." *DirecTV, Inc.*, 2006 WL 680533, at *1. Still, "[t]he Court need not accept the moving party's legal conclusions, because even after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* (citation modified).

"Before entering default judgment, the Court must address the threshold issue of whether it has personal jurisdiction and subject matter jurisdiction over the parties." *The Prudential Ins.*

*Co. of Am. v. Bramlett*, Civ. No. 08-119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010). "Then, 'the Court must determine (1) whether there is sufficient proof of service, (2) whether a sufficient cause of action was stated, and (3) whether default judgment is proper[.]'" *G & G Closed Cir. Events, LLC v. Remsen Assocs., Inc.*, Civ. No. 19-13019, 2021 WL 1139873, at *2 (D.N.J. Mar. 24, 2021) (alteration in original) (quoting *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, Civ. No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012)). To determine whether default judgment is proper, the court evaluates "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)); *see also Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (same). If these factors weigh in favor of the moving party, the court may grant default judgment.

## III. <u>DISCUSSION</u>

### A. Jurisdiction

"Before entering a default judgment as to a party that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Werremeyer v. Shinewide Shoes, Ltd.*, Civ. No. 19-10228, 2023 WL 6318068, at *2 (D.N.J. Sept. 28, 2023) (citation modified).

As for subject matter jurisdiction, Plaintiff brings all five claims under 17 C.F.R. § 240.10b-5, with Counts Three and Five also brought under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(2), (3). (ECF No. 42 at 12-14.) 17 C.F.R. § 240.10b-5 is a rule promulgated under Section 10(b) of the Securities Exchange Act of 1934 and "broadly prohibits deception, misrepresentation, and fraud 'in connection with the purchase or sale of any security.'" *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 78 (2006) (quoting 17 C.F.R.

§ 240.10b-5). Generally, courts have held that 17 C.F.R. § 240.10b-5 implies "a private damages action, which resembles, but is not identical to, common-law tort actions for deceit and misrepresentation." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005); *see also Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 261 n.5 (2010) (reiterating that implied private cause of action under Rule 10b-5 exists). As such, this Court has jurisdiction over Plaintiff's claims under 17 C.F.R. § 240.10b-5 pursuant to 28 U.S.C. § 1331.[3]

The Court also has personal jurisdiction over Defendants Mitchell, Blythe, and Intelenet. "For personal jurisdiction over 'an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.'" *Schumacher v. Betta*, Civ. No. 22-6167, 2024 WL 3092169, at *4 (D.N.J. June 21, 2024) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). For a corporation, the paradigm forum is where the corporation is "at home," usually its place of incorporation and principal place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Here, Plaintiff alleges that Defendants reside in New Jersey, (ECF No. 42 ¶¶ 1-3), and the Business Entity Status Report for Intelenet only lists its "Home Jurisdiction" and business addresses as New Jersey. (ECF No. 50 at 48.) As set forth below, Plaintiff properly served Defendants, establishing general jurisdiction. (*See infra* Section III.B.)

**B. Service of Process**

"Before the Court can enter default judgment, it must find that process was properly served on the [d]efendant." *Est. of Ianuzzi through Carroll v. Torres*, Civ. No. 22-1269, 2022 WL 2093143, at *3 (D.N.J. June 10, 2022) (quoting *Teamsters Pension Fund of Phila.. & Vicinity v.*

---

[3] As the Court previously ruled, Plaintiff's §§ 1983 and 1985 claims do not support the Court's exercise of federal question jurisdiction because Plaintiff's failure to allege state action renders those claims frivolous. *See Scheufler I*, 2024 WL 4696158, at *4-5; *Scheufler II*, 2025 WL 1885807, at *4 n.6.

*Am. Helper, Inc.*, Civ. No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011)). Rule 4 provides that service may be made upon an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Service may be made upon a corporation, partnership, or association "in the manner prescribed by Rule 4(e)(1) for serving an individual," or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]" Fed. R. Civ. P. 4(h)(1). Under New Jersey law "the primary method of obtaining personal jurisdiction over a defendant is by 'delivering a copy of the summons and complaint to the individual personally.'" *Days Inns Worldwide, Inc. v. Patel*, Civ. No. 13 6047, 2014 WL 2737893, at *1 (D.N.J. June 17, 2014) (citing N.J. Ct. R. 4:4-4(a)(1)); *see also* N.J. Ct. R. 4:4-4(a)(6) (service upon corporations can be effected by personal service on "officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof," or, in the alternative, on "a person at the principal place of business of the corporation in this State in charge thereof," or "any employee of the corporation within this State acting in the discharge of his or her duties"). The New Jersey Court Rules also provide that if personal service cannot be effected after a reasonable and good faith attempt, "which shall be described with specificity in the proof of service," the plaintiff may serve the summons and complaint by registered or certified mail. N.J. Ct. R. 4:4-3(a); N.J. Ct. R. 4:4-4(b)(1)(C).

According to the proof of service filed by Plaintiff, the Monmouth County Sheriff's Office personally served Blythe on August 5, 2025. (ECF No. 46 at 6.) This is compliant with service as required by New Jersey Court Rules 4:4-3(a) and 4:4-4(a)(1).

According to an Affidavit of Service from the Ocean County Sheriff's Office, Mitchell was served in his individual capacity and as an agent of Intelenet[4] on September 4, 2025 when an officer "posted in mailbox attached to house." (ECF No. 47 at 9-11 (agent of Intelenet), *id.* at 12-14 (personal capacity).) Additional Affidavits of Service, signed by a process server, indicate that service was also effected on Mitchell as an individual and as an agent of Intelenet[5] on October 14, 2025 when the summons and SAC, as well as a subpoena, were posted "to a conspicuous place" at Mitchell's residence. (ECF No. 50 at 39, 40.)

The Third Circuit has held that "[l]eaving papers in the defendant's physical proximity is usually sufficient if (1) defendant actively evades service, and (2) there is clear evidence that the defendant actually received the papers at issue when allegedly served." *World Ent. Inc. v. Brown*, 487 F. App'x 758, 761 (3d Cir. 2012); *see also Gambone v. Lite-Rock Drywall Corp.*, 124 F. App'x 78, 80 (3d Cir. 2005) (affirming the district court's holding "that after a series of thwarted attempts at personal service—which clearly demonstrated [the defendant's] active evasion of service—'leaving the papers on the doorstep after the door was slammed and announcing "you have been served" was sufficient personal service'"). Both factors are satisfied here. Plaintiff had multiple process servers make several attempts at serving Mitchell, and Mitchell informed one process server he "would not accept anything from [the server]," (ECF No. 47 at 9, 12), and did not answer the door for another process server despite four attempts at service while cars were in the driveway,

---

[4] The Monmouth County Sheriff's Office also personally served Blythe as Custodian of Records for Intelenet on September 26, 2025, (ECF No. 48 at 6), but the Business Entity Status Report for Intelenet only lists Mitchell as an agent for service of process, (ECF No. 50 at 48).

[5] Intelenet's Business Entity Status Report indicates that it is a "Domestic Profit Corporation," (ECF No. 50 at 48), and as such the Court considers whether service is sufficient under the rules for corporations pursuant to Rule 4(h)(1) and New Jersey Court Rule 4:4-4(a)(6).

(ECF No. 50 at 39, 40). Only after those attempts did the servers then leave the documents at Mitchell's known address.

Plaintiff also attempted to serve Mitchell as an individual and agent by mailing the summons and SAC to Mitchell's address via certified mail on August 7, 2025, and Mitchell signed for the packages on August 9, 2025. (ECF No. 47 at 16-17 (personal capacity); ECF No. 50 at 45-46 (agent of Intelenet).) Finally, Plaintiff also emailed the documents to Mitchell as an individual and agent on October 14, 2026, and the emails did not bounce back as undeliverable. (ECF No. 50 ¶¶ 16-17 (personal capacity); *id.* ¶¶ 26-27 (agent of Intelenet); *id.* at 39-40 (Affidavits of Service noting email attempts).) Although he has not answered the SAC, Defendant Mitchell previously filed a letter opposing a subpoena in May 2025, (ECF No. 37), and opposed Plaintiff's Motion for Default Judgment, (ECF No. 55), indicating that he is aware of the current action. As such, the Court finds Mitchell and Intelenet have been served despite the absence of personal service. *See Strike 3 Holdings, LLC v. Vokoun*, Civ. No. 20-14321, 2022 WL 310201, at *2-3 (D.N.J. Feb. 2, 2022) (finding sufficient service where "[the p]laintiff's process server went to [the d]efendant's residence four times to attempt personal service and each time no one answered the door despite the lights being on and there being a driveway full of cars" and plaintiff also sent multiple mailings to the defendant's address).

**C. Sufficiency of Plaintiff's Allegations**

Despite proper service, Plaintiff's SAC, even when liberally construed, fails to state a legal basis for any claim within this Court's jurisdiction. Although the parties appear to have been engaged in a previous business dispute that was fully litigated in state court, Plaintiff's SAC in this case again contains nothing more than "irrelevant assertions, misplaced legalisms, and

sovereign-citizen verbiage."[6] *In re Johnson*, Civ. No. 22-5258, 2023 WL 1784747, at *2 (E.D. Pa. Feb. 6, 2023).

### *1. Claims Asserted Against Intelenet*

As a preliminary matter, Plaintiff fails to allege any claims against Intelenet, despite naming the company as a Defendant in the SAC. As such, Defendant Intelenet must be dismissed. *See, e.g.*, *Prinkey v. Tennis*, Civ. No. 09-0052, 2010 WL 3025145, at *4 (M.D. Pa. July 29, 2010) ("Defendant Thompson will be dismissed as a party to this action since [the p]laintiff has not presented any claims against him in his Amended Complaint."); *Landry v. W. Caln Twp.*, Civ. No. 24-6315, 2025 WL 417342, at *4 (E.D. Pa. Feb. 6, 2025) (dismissing defendant police department with prejudice where "[a]lthough [the plaintiff] names the [p]olice [d]epartment as a defendant, none of her claims are actually brought against it");

While the SAC does bring several claims—Counts Two, Three, and Five—against "Defendants" generally, (ECF No. 42 ¶¶ 31-32, 34), the alleged wrongful conduct therein focuses

---

6 As the Court twice previously noted, Plaintiff's claims may also be barred by the *Rooker Feldman* doctrine. *See Scheufler I*, 2024 WL 4696158, at *7; *Scheufler II*, 2025 WL 1885807, at *4 n.8. The *Rooker-Feldman* doctrine provides that "federal district courts lack jurisdiction over suits that are essentially appeals from state court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010). *Rooker-Feldman* has four prerequisites: "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Id.* at 166. Although the SAC is not entirely clear, Plaintiff appears to attack the sufficiency of the state court judgment. (*See, e.g.*, ECF No. 42 ¶¶ 10 ("Defendant's fraud upon the chancery court facilitated the conversion . . . [which] resulted in unjust orders[.]"); 11 ("Defendant's willful misconduct and misrepresentations impaired the State Court's judicial machinery. The chancery court relied on Defendant's fraudulent ownership claims to assign control of the Undersigned's property to the Defendant's [sic]."); 25 ("On February 19th (AD) 2019 another ex parte order was issued by chancery court permanently enjoining the Undersigned from use of his Intelenet property. That order was nullified[.]").) In his opposition, Mitchell also argues that this case must be dismissed as Plaintiff "presents no new evidence, no new findings and no new information" and "is simply attempting to retry the same case, hoping for a different outcome." (ECF No. 55 at 3.)

on the actions of Defendants Mitchell and Blythe and their representations to the Chancery Court and in criminal charges against Plaintiff. Furthermore, "a plaintiff may not plead in the collective by using the word '[d]efendants' without specifying which specific defendant engaged in the specific conduct alleged by the plaintiff." *Santos v. Berroa*, Civ. No. 25-6329, 2026 WL 184266, at *15 (E.D. Pa. Jan. 23, 2026).

### *2. Section 1983 and 1985 Claims (Counts Three and Five)*

For the same reasons already detailed in the Court's prior Opinions, the Court again finds that Plaintiff's allegations made pursuant to 42 U.S.C. §§ 1983 and 1985 are insufficient to state a claim. *Scheufler I*, 2024 WL 4696158, at *4-5; *Scheufler II*, 2025 WL 1885807, at *5. Again, Plaintiff has failed to allege that Defendants are state actors, as generally required to state a claim under those statutes. *See Thompson v. Eva's Vill. & Sheltering Program*, 243 F. App'x 697, 698 (3d Cir. 2007) (affirming summary judgment where the defendants were not state actors). Conclusory allegations that "Intelenet is deemed a state actor in respondeat superior," (ECF No. 42 ¶ 12), are insufficient when the SAC otherwise clearly alleges that Intelenet is a private corporation formed by Plaintiff, (*id.* ¶ 19; *see also* ECF No. 50 at 48 (Business Entity Status Report for Intelenet indicating it is a "Domestic Profit Corporation")).[7]

[7] Also insufficient are Plaintiff's allegations that Defendants are state actors because when they "engag[ed] in fraud to obtain and then wield a court order, they are participating in a state function." (ECF No. 42 ¶ 11.) It is well-established that "[m]erely resorting to the courts and being on the winning side of a lawsuit does not make one a state actor for purposes of § 1983." *Smalls v. Wahl*, Civ. No. 25-4852, 2025 WL 3470045, at *4 (E.D. Pa. Dec. 2, 2025), *aff'd,* Civ. No. 25-3404, 2026 WL 1068915 (3d Cir. Apr. 20, 2026); *see also, e.g.*, *Jacobs v. A Robert Depersia Agency*, Civ. No. 09-0180, 2009 WL 799944, at *3 (D.N.J. Mar. 20, 2009) ("[T]he fact of participation in a litigation does not transform a private litigant into a state actor."). Plaintiff's citation to *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982), (ECF No. 51), does not establish otherwise. This Court agrees with other courts that have explained *Lugar* makes clear that "a private party is not converted into a state actor simply by invoking state legal procedures." *Angelico v. Lehigh Valley Hosp., Inc.*, Civ. No. 96-2861, 1996 WL 524112, at *2 (E.D. Pa. Sept. 13, 1996), *aff'd,* 184 F.3d 268 (3d Cir. 1999).

### *3. Securities Exchange Act Claims (Counts One through Five)*

In the SAC, Plaintiff asserts claims under 17 C.F.R. § 240.10b-5 for the first time. (ECF No. 42 ¶¶ 30-34 (Counts One through Five).) 17 C.F.R. § 240.10b-5 is a Rule promulgated pursuant to Section 10(b) of the Securities Exchange Act of 1934. That Section "makes it unlawful to 'use or employ, in connection with the purchase or sale of any security, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe.'" *In re Bradley Pharms., Inc. Sec. Litig.*, 421 F. Supp. 2d 822, 826 (D.N.J. 2006) (quoting 15 U.S.C. § 78j(b)). Rule 10b-5 specifically makes it unlawful, in connection with the purchase or sale of any security:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person[.]

17 C.F.R. § 240.10b-5. In essence, Rule 10b-5 "creates a private cause of action for investors harmed by materially false or misleading statements." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 275 (3d Cir. 2006). Claims under this Rule "may only be brought by actual purchasers or sellers of a security." *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 394 (D. Del. 2010), *aff'd,* 442 F. App'x 672 (3d Cir. 2011).

To state a claim under Rule 10b-5, "a plaintiff must allege: (1) a material misrepresentation or omission; (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss." *Advanced Multilevel Concepts, Inc. v. Bukstel*, 919 F. Supp. 2d 564, 572 (E.D. Pa. 2013). There are heightened pleading

requirements for certain elements of securities fraud actions. The Private Securities Litigation Reform Act of 1995 (PSLRA) requires a securities fraud complaint to:

> (1) "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed," 15 U.S.C. § 78u-4(b)(1); and
>
> (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2).

*In re Bradley Pharms.*, 421 F. Supp. 2d at 826. The requirements imposed by the PSLRA exceed those already imposed by Rule 9(b), which requires plaintiffs to state "with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b); *Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621, 639 (D.N.J. 2021).

Plaintiff's Rule 10b-5 claims fail as he has not pled the reliance on the purported misrepresentation. "To state a claim for securities fraud under Section 10(b) and Rule 10b-5 thereunder, a complaint must show that *plaintiffs* reasonably relied on defendants' allegedly fraudulent misrepresentations, omissions, or conduct." *Jones v. Intelli-Check, Inc.*, 274 F. Supp. 2d 615, 632 (D.N.J. 2003) (emphasis added). But the SAC alleges that it is the Chancery Court, not Plaintiff, that relied on Defendants' alleged misrepresentations. (ECF No. 42 ¶ 11 ("The chancery court relied on Defendant's fraudulent ownership claims to assign control of the Undersigned's property to the Defendant's [sic].").) For this reason alone, Plaintiff's claims fail.[8]

---

[8] The Court notes that even if Plaintiff had plausibly pled reliance, his claims fail as he has also failed to plead the required element of scienter and failed to satisfy the heightened pleading requirements for scienter pursuant to the PSLRA. 15 U.S.C. § 78u-4(b)(2); *Walish v. Leverage Grp., Inc.*, Civ. No. 97-5908, 1998 WL 314644, at *3 (E.D. Pa. June 15, 1998) ("[R]ote allegations that [the d]efendants 'knowingly made false statements of material fact with the intent to deceive and defraud the [p]laintiffs' and 'recklessly created a false and misleading impression . . .' do not meet the standards for pleading scienter under the PSLRA."); *McGowan Invs. LP v. Frucher*, 481

**D. Appropriateness of Default Judgment**

Because the SAC fails to state a claim for relief, Plaintiff's Motion for Default Judgment must be denied. *See Wallace v. Fed. Employees of U.S. Dist. Court, EDPA*, 325 F. App'x 96, 101 n.5 (3d Cir. 2009) (noting that granting default judgment "would not have been proper because . . . the complaint fails to state a claim upon which relief can be granted"); *Tiaa Com. Fin., Inc. v. Galusha*, Civ. No. 19-14809, 2020 WL 7022636, at *5 (D.N.J. Nov. 30, 2020) ("Granting default judgment is improper where the plaintiff has failed to state a sufficient cause of action.").[9]

**E. Dismissal with Prejudice**

Because the SAC fails to state a claim, the Court must not only deny Plaintiff's Motion for Default Judgment, (ECF No. 50), but also dismiss the SAC. *Carney v. Hargrave*, Civ. No. 03-1717, 2006 WL 3825130, at *4 (D.N.J. Dec. 22, 2006) ("Plaintiff's request for default judgment shall be denied and the Complaint shall be dismissed, no cause for action."); *Lewis v. Chance*, Civ. No. 25-446, 2025 WL 5215722, at *3 (M.D. Pa. Oct. 21, 2025), *report and recommendation adopted sub nom. Lewis v. Chance*, 2025 WL 5153641 (M.D. Pa. Dec. 8, 2025) ("If the plaintiffs cannot show the colorable merit of their claims, then their default motions fail, and the proper course is the dismissal of the lawsuit.").

Ordinarily, such a dismissal is without prejudice and with leave for Plaintiff to amend the complaint. However, this is Plaintiff's third Motion for Default Judgment. (*See* ECF Nos. 15, 29.) In prior Opinions denying those Motions, the Court extensively described the defects in the

---

F. Supp. 2d 405, 418 (E.D. Pa. 2007), *aff'd sub nom. McGowan Invs. LP v. Meyer*, 392 F. App'x 39 (3d Cir. 2010) ("Allegations of personal gain alone are insufficient to show scienter.").

[9] As previously outlined, Defendants may also have several meritorious defenses rendering default judgment improper, including that Plaintiff's claims are time-barred or precluded under New Jersey's entire controversy doctrine. *See Scheufler I*, 2024 WL 4696158, at *7-8; *Scheufler II*, 2025 WL 1885807, at *7 n.11. (*See also* ECF No. 55.)

complaints and gave Plaintiff opportunities to amend. *Scheufler I*, 2024 WL 4696158, at *8; *Scheufler II*, 2025 WL 1885807, at *8. Yet the SAC again brings §§ 1983 and 1985 claims, (ECF No. 42 ¶¶ 32, 34), that this Court has twice held Plaintiff cannot pursue given his failure to allege state action, *Scheufler I*, 2024 WL 4696158, at *4-5; *Scheufler II*, 2025 WL 1885807, at *4 n.6, *5, and also fails to state a claim under the newly asserted 17 C.F.R. § 240.10b-5, (*see supra* Section III.C.3).

"Courts have discretion to dismiss complaints with prejudice after 'repeated failures to cure the deficienc[ies] by amendments previously allowed,'" *Pryce v. PrimeCare Med.*, Civ. No. 21-753, 2024 WL 3761733, at *5 (E.D. Pa. Aug. 12, 2024) (quoting *Stovall v. Grazioli*, Civ. No. 20-2041, 2023 WL 3116439, at *3 (3d Cir. Apr. 27, 2023)), *aff'd as modified,* Civ. No. 24-2685, 2025 WL 1293077 (3d Cir. May 5, 2025), and where "amendment would be inequitable or futile," *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245-46 (3d Cir. 2008); *see also Kennedy v. Envoy Airlines Inc.*, Civ. No. 15-8058, 2018 WL 895871, at *6 (D.N.J. Feb. 14, 2018), *aff'd sub nom. Kennedy v. Am. Airlines Inc.*, 760 F. App'x 136 (3d Cir. 2019) ("Allowing leave to amend where there is a stark absence of any suggestion by the plaintiffs that they have developed any facts since the action was commenced . . . would frustrate Congress's objective to filter out lawsuits that have no factual basis." (citation modified)). As Plaintiff has had multiple opportunities to amend his Complaint with detailed guidance from the Court, and his core allegations—that Defendants made misrepresentations to the Chancery Court in order to appropriate Plaintiff's funds and shares in or ownership of Intelenet—have remained consistent across the Complaint, FAC, and now SAC, (ECF Nos. 1, 23, 42), the Court finds that any further amendment would be futile. *Phillips*, 515 F.3d at 245-46. As such, the SAC is dismissed with prejudice. *LaGuardia v. Ross Twp.*, Civ. No. 15-1475, 2016 WL 4502443, at *10 (M.D. Pa. Aug. 29, 2016), *aff'd,* 705 F. App'x 130 (3d Cir.

2017) ("Because the court finds that amendment would be futile, the court finds a sua sponte dismissal to be appropriate despite the plaintiff not having notice or an opportunity to respond.").

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Plaintiff's Motion for Default Judgment (ECF No. 50) is **DENIED** and the SAC is **DISMISSED** with prejudice. An appropriate Order follows.

Dated: October 30, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE